## Acker, Sheriff, to the use of First National Bank of Milwaukee, Appellant, *v.* Delp et al.

*National banks—Drafts—Bills of lading—Right to purchase— Property rights in commodities.*

National banks have no authority to engage in the purchase of bills of lading. The purchase of drafts is clearly within their authority, and this includes drafts to which bills of lading are attached. Upon payment of such drafts every interest of the bank in the commodity represented by the bill of lading would be extinguished. But until the draft is paid, and where the purpose disclosed by the evidence is to enforce collection of the draft, the bank may enforce its property rights in an attached bill of lading even against the real owner of the property represented thereby.

*Bond—Foreign attachment—Assignability—Right of action.*

A bond given to the sheriff and his assigns for his protection in executing a writ of foreign attachment is assignable to the use-plaintiff. Having procured an assignment of the bond the use-plaintiffs may proceed at once thereon. It is not necessary that

suit be first brought against the sheriff and that he thereafter bring suit upon the bond.

Argued December 20, 1920.   Appeal, No. 349, Oct. T., 1920, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1914, No. 4072, in the case of A. Lincoln Acker, sheriff of the City and County of Philadelphia, to the use of the First National Bank of Milwaukee, v. Edmund E. Delp and August F. Gruber, trading as E. E. Delp Grain Company and Charles Gruber.   Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.   Reversed.

Assumpsit upon bond given sheriff in foreign attachment.   Before PATTERSON, J.

The facts are stated in the opinion of the Superior Court.

Verdict was directed for the plaintiff in the sum of $872.88.   The court subsequently upon motion entered judgment for the defendant non obstante veredicto. Plaintiff appealed.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Thomas F. Gain,* and with him *Frank A. Chalmers* and *Brown & Williams,* for appellants.—The transaction was the usual purchase or discounting of a draft with a bill of lading attached and the bank thereby acquired title to the property represented by the bill of lading: Samford Rolling Mills v. Erie R. R., 257 Pa. 507; City National Bank v. Isenberg, 59 Pa. Superior Ct. 163; First National Bank v. Hartzell, 55 Pa. Superior Ct. 56.

A bond given to public officers or in judicial proceedings is enforceable according to its terms: City of Philadelphia to use v. Nichols, 214 Pa. 265; Bowditch v. Gourley, 24 Pa. Superior Ct. 342.

*Latimer P. Smith,* and with him *John R. Cassell,* for appellees.—Purchase of a bill of lading means the purchase of goods in transit and a national bank has no authority to engage in such a transaction: Bank v. Bank, 247 Pa. 40.

No right of action having accrued to the sheriff on the bond his assignee has no right of action thereon: Clement to the use v. Courtright, 9 Pa. Superior Ct. 45.

OPINION BY HEAD, J., April 18, 1921:

The Franke Grain Company was a dealer in grain, having its place of business in the city of Milwaukee. In January, 1914, it shipped a car load of corn to Philadelphia over the Lehigh Valley Railroad. It received from that company a standard bill of lading in the usual form which shows that the car was consigned by the shipper to itself at Philadelphia and with direction to the carrier to notify E. E. Delp Grain Company. The consignor then drew a sight draft on said Delp Company of Philadelphia for $637.14. It took this draft, with the bill of lading attached, to its bank in the city of Milwaukee and received credit in its checking account for the amount thereof less ninety-five cents, discount and exchange. The draft was sent by the bank in Milwaukee to its correspondent bank in Philadelphia and duly presented to the drawee who refused payment. The drawee then began an action in foreign attachment in the city of Philadelphia against the Franke Grain Company, the consignor of the car of corn, and the sheriff attached the commodity named and afterwards, under an order of the court, sold the same as perishable property and paid the proceeds of the sale, less costs, into court. Before executing the writ, the sheriff demanded and received from the present defendants a bond to indemnify him against any suits, actions or damages that might result from the execution of said writ. This bond, according to its terms, was to inure to the benefit of the said sheriff, "his certain attorneys, executors, adminis-

trators or assigns." Evidently for the purpose of avoiding multiplicity of actions, the sheriff assigned this bond to the Milwaukee bank, the use-plaintiff, and the present action is assumpsit founded upon that written obligation. The case was tried before a court and jury and resulted in a verdict for the use-plaintiff. It is true this verdict was directed by the trial judge. Thereafter the court in banc made absolute a rule for judgment non obstante veredicto and entered judgment for the defendants and this appeal followed.

A careful study of the brief opinion filed in support of the judgment entered discloses a considerable misconception of the true situation which prevailed throughout the trial. Let us examine that record. In the fourth paragraph of the statement of claim filed appears the following averment of fact: "On January 14, 1914, the use-plaintiff herein......bought the said draft and bill of lading from the Franke Grain Company of Milwaukee [and thereby became possessed and owned said car of corn set forth and described in the above-mentioned bill of lading]." The brackets are ours. Now the first part of the paragraph quoted avers a fact and a fact supported by practically the undisputed evidence in the case. The last clause of the paragraph, in brackets, sets forth a conclusion of law drawn by the pleader from the fact averred. That such a conclusion is stated too broadly to be accurate, we regard as plain.

In a limited and qualified sense one might say that as a result of the purchase of the draft, with the bill of lading attached, the purchaser did acquire such a qualified interest in the commodity as would carry with it the right to possession in the first instance and the further right to compel, by the use of that commodity, the payment of the sum of money called for in the draft. In other words, the holder of that bill of lading could defend his possession of the commodity even against its real owner until the debt was paid. With the payment of the draft, every interest of the holder of the bill of

lading attached to the draft would be extinguished and
the real owner of the commodity could assert his title
and take possession of the property.  If we suppose for
a moment that a merchant in Philadelphia, buying a
car load of merchandise from a vendor in Milwaukee,
was compelled, by the terms of his contract, to pay one-
half of the price of the commodity in advance, with his
order, and the balance upon the arrival of the car load
in Philadelphia, it would be apparent that the holder of
the bill of lading accompanying a draft for the balance
was not the owner of the commodity, worth twice the
amount of the draft, but simply had a lien on it which
would enable him to enforce the payment of the debt due.

The first affidavit of defense planted the case of the
defendant, in so far as the facts of the transaction were
involved, on the proposition that "the First National
Bank of Milwaukee was only the agent for the collec-
tion of said draft and not the purchaser thereof."  As
the trial proceeded it becomes more and more apparent
that both counsel and witnesses used the expressions
"draft" or "bill of lading" as interconvertible terms rep-
resenting the same thing.  Much of the testimony was
taken by depositions responsive to interrogatories and
cross-interrogatories prepared by counsel.  The ninth
interrogatory presented to each of these witnesses was in
the following language: "When bills of lading are taken
by plaintiff bank for collection only, do you or not credit
the depositor's bank account with the amount of the
draft on that date?"  Manifestly no bank ever took a
bill of lading for collection.  What would it seek to col-
lect?  The bill of lading is not an obligation calling for
the payment of money.  It is not issued by either of the
parties to the commercial transaction involved.  It is
issued by the carrier and recites its obligation to safely
transport the physical property to the destination named
and deliver it to the consignee or other holder of the
bill of lading which by the federal statute may be freely
assigned.  Now the witness correctly answers the inter-

rogatory quoted in this language: "When drafts are taken for collection, they are not credited to the depositor until the bank receives returns." In some places either counsel or witness or both speak of the draft as attached to the bill of lading, whilst in others they adopt the more usual and accurate form of expression when they state the bill of lading was attached to the draft.

Reading the evidence then as a whole, we are satisfied that it supports the conclusion that the use-plaintiff bank was in truth and in fact the lawful holder of the draft in question and had paid full value for it. There is no evidence to the contrary, and it must have been upon the assumption that the evidence on this subject was uncontradicted the learned trial judge directed the verdict for the plaintiff. No objection to that action of the court is shown by the record and it is manifest the defendant thereafter relied upon certain legal propositions supposed to be involved. In the opinion entering judgment for the defendant the court below quotes one interrogatory which refers entirely to the bill of lading without mentioning the draft and the single answer of the witness exhibiting the confusion in terms to which we have already adverted. Upon that single question and answer the court below seems to have determined for itself, as a question of law, that the transaction was simply the purchase of a bill of lading and that a national bank, under its charter, has no right to purchase or deal in such property. This left out of consideration the whole trend of the testimony in its entirety and attached no significance whatever to the verdict that had been rendered. The case of Bank v. Bank, 247 Pa. 40, is cited as controlling authority for the action taken by the court.

We observe, to begin with, that in the case-cited the appeal to the Supreme Court was quashed. That meant, of course, that the record then before the court exhibited no foundation upon which the appeal could rest. The action was brought by one national bank against an-

other upon a contract entered into between them.   This contract provided, inter alia, that the plaintiff bank was to deposit from time to time with the defendant sums of money for safekeeping and investment and that "of the said moneys so deposited, the First National Bank of New Kensington (the defendant) might invest for plaintiff, in the purchase of bills of lading for grain, to be held by the First National Bank of Kensington for the account of the plaintiff, upon the agreement that the same should be sold at the amount invested, plus interest at the rate of six per centum." The statement of claim further averred that the defendant had actually used the plaintiff's funds in the purchase of bills of lading aggregating $14,911.98.   The case was tried before a judge and jury.   When the testimony was closed defendant's counsel presented a point for binding instructions to the jury.   The trial judge affirmed the point and no exception was taken to this action.   A verdict for the defendant followed.   Motion for a new trial was made and upon its argument counsel sought to bring about the desired result by the discussion of certain alleged trial errors.   A new trial was refused and judgment entered on the directed verdict.   In the course of his opinion Mr. Justice POTTER thus stated the ratio decidendi: "Counsel for defendant has filed a motion to quash the appeal on the ground that where a verdict for defendant has been rendered by direction of the court, and no exception taken thereto, rulings made during the trial cannot be assigned for error.   The point is well taken.   It is directly supported by the decision in Guemple v. Rapid Transit Co., 224 Pa. 327." Further on in the opinion, discussing the action of the court below in refusing to allow an amendment to the statement of claim—so that the cause of action declared on would be changed from one for the purchase of bills of lading for grain to one for the purchase of sight drafts with bills of lading for grain attached thereto,—it is said: "It is very clear that a contract to purchase bills of lading dif-

fers essentially from an agreement to purchase sight drafts. A bill of lading represents the goods which are in transit, and its purchase would mean the purchase and control of the goods. The trial judge very properly held that under the terms of its charter, a national bank had no authority to engage in such a transaction. On the other hand the purchase of drafts would clearly fall within the limits of the bank's authority." We are of opinion therefore the learned court below fell into error in assuming, as a question of fact, that the transaction really disclosed by the pleadings and all of the evidence was the purchase of a bill of lading, for the purpose of obtaining control of the goods represented by it, rather than the purchase of a draft with a bill of lading attached as a security that might be used if necessary to compel the payment of the draft.

But it is urged that even if a good cause of action has been made out, the use-plaintiffs may not here and now recover because the sheriff had no power to assign to them the bond upon which the action is founded. Why had he not such power? As already noted, in so far as these defendants who executed the bond could give him such power, they did it in express terms. Why should they now be heard to repudiate that portion of the instrument they themselves executed? No statute forbids such an assignment. The theory of the learned counsel for the appellee seems to be in substance this: True, the use-plaintiff has shown a good cause of action. He must therefore bring his action against the sheriff. After a verdict and judgment shall have been obtained against that officer, then he in turn may bring a suit on the bond and the defendants would find themselves just where they now are. If the administration of the law has been rendered thus uselessly tedious and expensive, it would seem to be time that such useless restrictions should be done away with. But it is argued that we are not now at liberty to consider the question an open one because it has been ruled by Clement, for the use, etc., v. Courtright, 9 Pa. Supe-

rior Ct. 45. It appears to us no such conclusion can properly be drawn from a consideration of that case. It is true that in the opinion elaborating the reasoning for the judgment there reached, certain general propositions are stated eminently correct under the facts there being considered. Speaking of the condition of the bond given to the sheriff in that case, it is said: "Its condition, undoubtedly, embraced any liability which the sheriff incurred through the plaintiff's failure to prosecute with effect. But it does not extend to an injury sustained by the defendants, *unless a right of action against the sheriff thereby accrued to them."* (Italics ours.) We are not persuaded therefore, under the conditions and circumstances here presented, that these defendants may successfully rest upon the technical defense thus advanced.

For the reasons given we must conclude the learned court below fell into error.

The judgment is reversed and the record remitted to the court below with direction to enter judgment in favor of the plaintiff on the verdict.